UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CELLCO PARTNERSHIP, d/b/a Verizon Wireless,<br><br>                     Plaintiff,<br><br>     v.<br><br>CITY OF ELKHART BOARD OF ZONING APPEALS,<br><br>                     Defendant. | CAUSE NO. 3:23-CV-913 DRL-SJF |

## OPINION AND ORDER

Petitioner Cellco Partnership d/b/a Verizon Wireless (Verizon) brings this action against the City of Elkhart Board of Zoning Appeals (BZA) under the Telecommunications Act of 1996 (TCA) and state law. Verizon asserts that the BZA improperly denied an application for a use variance to situate a 135-foot wireless communication facility (monopole). Verizon requests summary judgment and an injunction. The court grants judgment for Verizon and remands the matter to the BZA.

## BACKGROUND

In August 2023, Heidi Gaskill, trustee of the Heidi Gaskill Revocable Trust (Trust), petitioned the BZA for a use variance to place a Verizon monopole on the Trust's property in Elkhart, Indiana [26-1 at 8-10]. The Trust needed the variance because the property is zoned for low-density single-family residential development, and wireless communication facilities are not permitted there under Elkhart's zoning ordinance [*id.*; 29-3 at 52].

The BZA held a public hearing on the variance petition on September 14, 2023 [26-1 at 70-74]. Doug Dolan of Dolan Realty Advisors spoke on behalf of the Trust and gave a presentation about the proposed cell site [*id.* 70-71]. His presentation included information on the need for the proposed monopole, its safety, and how it would impact nearby property values. On need, Mr. Dolan shared

information from Verizon network and radiofrequency engineers indicating that there was a coverage gap in Elkhart [*id.* 80-84; 29-2 at 3-8]. The gap's existence was based on unreliable service in-residence and in-vehicle around the proposed monopole site, and the presentation showed how the proposed monopole would bridge the gap [*id.* 70-71].

Mr. Dolan addressed monopole safety, sharing a letter from the structural engineer who designed the monopole. The engineer said the monopole was designed according to the ANSI/TIA-222-G structural standard from the Telecommunications Industry Association and conformed to the requirements of the 2006-2012 International Building Code [29-2 at 27; 29-8 at 6]. The engineer explained that monopole tower failures are extremely rare, and storm-related failure would require highly unlikely 180 mile per hour winds. He said monopole failures typically only result from an act of God, uncontrollable vandalism, or gross neglect of routine maintenance [*id.*].

Finally, Mr. Dolan presented excerpts from a report from the firm CohnReznick on the proposed monopole's anticipated impacts on adjacent property values [26-1 at 93-94]. The report evaluated peer authored studies, impacts from comparable cell towers in the local area, and interviews with local assessors, finding that cell towers do not have a negative impact on adjacent property values [29-2 at 34-46]. The report was publicly available [29-2 at 47].

The BZA also heard statements from Elkhart residents who opposed the monopole. Many were skeptical about the need for the structure, believing their cell service from Verizon was adequate [26-1 at 72-73]. Three objectors stated they were Verizon customers and that they had good local cell service [*id.*]. One community member explained that her husband had no communication issues while working in their basement; she and her husband tested service near the proposed site, and he drove around the neighborhood and called her without issue from different locations [*id.* 73].

Some residents expressed concern about the pole's safety, having read internet reports of other cell structures collapsing, and were nervous about the site's proximity to a school [*id.* 72]. Certain residents

were also wary because of the structure's possible negative impacts on nearby property values [*id.* 72-73]. One community member said he spoke to and received data from persons at Berkshire Hathaway, and another found data online from the National Realtors Association; each said the data indicated that a cell tower can decrease adjacent property values [*id.*]. And another speaker described finding websites that said the same [*id.* 72]. Finally, some complained that it would harm neighborhood aesthetics [*id.* 72-73].

Ms. Gaskill spoke in support of the variance [*id.* 71]. And City of Elkhart staff recommended the BZA approve the use variance, finding that the structure met the requisite zoning ordinance conditions [*id.* 5-7, 74; *see also* 29-3 at 145-46].

The BZA voted unanimously (3-0) to deny the application during the hearing [26-1 at 74]. No board member articulated an explanation for his or her vote [*id.*]. The only board member to comment (Andy Jones) said his decision was not based on any information provided or any independent research regarding alleged health and safety issues associated with proximity to a cell tower [*id.*]. The BZA sent a letter to the Trust on September 27, 2023 that confirmed the variance denial [*id.* 3]. The letter also omitted any explanation for the vote [*id.*].

According to the BZA, the minutes of the September 14, 2023 hearing were not available for the BZA's next meeting due to their length and staffing shortages [36 ¶ 192]. A draft of the minutes was available on the BZA's website on November 2, 2023 [*id.* ¶ 194], and the final version was approved during the BZA's meeting on November 9, 2023 [*id.* ¶ 195].

## STANDARD

A district court reviewing a TCA claim must decide "whether the municipal body's decision was 'supported by substantial evidence.'" *Helcher v. Dearborn Cnty.*, 500 F. Supp.2d 1100, 1108 (S.D. Ind. 2007), *aff'd* 595 F.3d 710 (7th Cir. 2010); *see also* 47 U.S.C. § 332(c)(7)(B)(iii)). "The statutory phrase 'substantial evidence' is a term of art in administrative law that describes how an administrative record is to be judged by a reviewing court." *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 301 (2015) (quotations omitted).

The question is whether the board clearly erred in refusing to issue the permit. *Helcher*, 595 F.3d at 723; *PrimeCo Pers. Commc'ns, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1149 (7th Cir. 2003). Substantial evidence is "more than a mere scintilla," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), and the record must contain "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Aegerter v. City of Delafield*, 174 F.3d 886, 889 (7th Cir. 1999). The standard is "highly deferential to the local government making the decision." *Helcher*, 595 F.3d at 723 (citing *VoiceStream Minneapolis, Inc. v. St. Croix Cnty.*, 342 F.3d 818, 830 (7th Cir. 2003)). The burden rests on the party challenging the decision. *Id.*

## DISCUSSION

Congress enacted the TCA in part to address local government decisions that unreasonably slow the growth of cellphone and other wireless services. *See PrimeCo*, 352 F.3d at 1148. Though local governments retain "authority . . . over decisions regarding the placement, construction, and modification of personal wireless service facilities," 47 U.S.C. § 332(c)(7)(A), they must adhere to certain requirements on their use of that authority, 47 U.S.C. § 332(c)(7)(B).

A municipality's denial of a permit to place a wireless facility must be "in writing and supported by substantial evidence." 47 U.S.C. § 332(c)(7)(B)(iii). The locality's regulation cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Any person adversely affected by a local authority's decision or failure to act may, within 30 days, petition for expedited review. 47 U.S.C. § 332(c)(7)(B)(v).

Verizon seeks judicial review and an injunction requiring the BZA to issue the variance and any other necessary permits. The company advances three arguments. First, Verizon argues that the BZA's variance denial violated the requirement that its decision be in writing and supported by substantial evidence. Second, the company argues that the BZA's denial violated the TCA by effectively prohibiting the provision of personal wireless services. Third, Verizon argues that the denial violated Indiana law because the decision was arbitrary, capricious, and unsupported by substantial evidence.

In response, the BZA argues its decision comports with the TCA and Indiana law. The BZA says its denial was lawful, in writing, and supported by substantial evidence. Any compliance errors, the BZA says, were harmless and not prejudicial to Verizon. The BZA says the remedy for any identified violation should be a remand with instructions to issue a compliant decision expeditiously.

The "in writing" requirement from 47 U.S.C. § 332(c)(7)(B)(iii) means that a local decisionmaker like the BZA must provide written reasons that are "stated clearly enough to enable judicial review" when it denies a monopole siting application. *Roswell*, 574 U.S. at 303. These reasons are not required to be in any particular format and could even be in "detailed meeting minutes." *Id.* A reviewing court must be able to "identify the reason or reasons why the locality denied the application." *Id.* at 300.

When the BZA denied the Trust's application for a use variance, it provided no written reasons for its denial that would facilitate a meaningful appeal or enable judicial review. The BZA's post-hearing letter omitted such an explanation and merely recited the 3-0 vote. The BZA's minutes likewise merely recorded the votes without any explanation. The written transcript seems to offer no additional clarity [*see, e.g.,* 26-1 at 117-18]. The BZA cites nothing particular in the record, and the court will not scour the record to try to find something when the BZA cannot offer a simple explanation for its decision or evidentiary citation for it on review.

On this record, the court cannot "determine whether [the] locality's denial was supported by substantial evidence." *Roswell*, 574 U.S. at 300. The reasons why the BZA denied the application are wholly unclear and unexplained—a mere "no" and "yes" offers no context. Thus, the BZA's decision fails to satisfy the TCA's "in writing" requirement. *See* 47 U.S.C. § 332(c)(7)(B)(iii).

The BZA's failure to provide written reasons is not harmless. Congress included the "in writing" requirement in the TCA so that a court could review the decision if petitioned and ensure that the statute's requirements were met. *Roswell*, 574 U.S. at 300-02. The BZA's omission means Verizon cannot meaningfully articulate a challenge to any one reason, if in fact any reason existed. The record places

5

Verizon in the unusual position of having to imagine reasons and then shoot in the dark to argue against them, and that flips the obligation of articulating substantive reasons for denying a variance on its head. Nothing would stop the BZA from building on Verizon's imaginative wisdom; and the court too is cautious of *post-hac* rationalizations. One board member seemed to indicate his decision was based on something outside health and safety issues, but exactly what the record never says. This record all but precludes judicial review. *See id.* at 304 n.3. The court understands time demands and staffing shortages, but the law says what it says, and the court cannot do its job when the BZA has not done its job. *See id.* at 301. The BZA violated the TCA.

The court now must decide the appropriate remedy. "The TCA does not specify a remedy for violations of the cellular siting subsection." *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (citing 47 U.S.C. § 332(c)(7)(B)(v)). "[T]he ordinary rule in administrative law is that a court must remand errors to the agency 'except in rare circumstances,'" *Roswell*, 574 U.S. at 309 (Alito, J., concurring) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)), though the court remains mindful that the law abhors a futile act, *Ohio v. Roberts*, 448 U.S. 56, 74 (1980), not least when the TCA favors reasonably prompt local review, *see* 47 U.S.C. § 332(c)(7)(B)(ii).

The BZA offered no original reasons for its denial that would permit review now. Instead, the BZA offers for the first time here certain after-the-fact rationalizations that it contends could have been supported by substantial evidence in the administrative record. There is a short answer to this proffer: the law will not permit it. *See Roswell*, 574 U.S. at 304 n.3; *Burlington Truck Lines v. United States*, 371 U.S. 156, 169 (1962). The court must evaluate for substantial evidence what the board articulated as its reasons, and such reasons simply do not exist on this record.

For its part, Verizon too seems to invite the court to engage in a similar (somewhat hypothetical) exercise of evaluating whether the BZA might have had a sound basis for its decision, albeit for the purpose of securing an injunction. Whether the court doubts, after careful review of the record and the

BZA's after-the-fact explanations on appeal, that these rationalizations might be supported by substantial evidence, the proper course is a remand without prejudging the possible rationale.

First, "if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *See Florida Power*, 470 U.S. at 744; *see also Roswell*, 574 U.S. at 309 (Alito, J., concurring). The proper allocation of judicial resources favors ensuring that the substantial evidence review occurs as designed, with explanation in hand. Second, and somewhat relatedly, sound concepts of federalism, echoed within the TCA, *see* 47 U.S.C. § 332(c)(7)(A), counsel an explained administrative decision before a judge's review.

Third, though the law requires the BZA to act within a reasonable time, *see* 47 U.S.C. § 332(c)(7)(B)(ii), the BZA never slow-rolled its process or decision in 2023. The variance petition was filed August 7. The BZA held a public hearing on September 14. It voted at the close of its hearing. Verizon knew of the result then, though not the explanation. The board sent a letter to the Trust on September 27. The minutes came later in fairness, on November 9, but Verizon still sought prompt review. There is no question the BZA violated the TCA in never providing a written explanation, but no one seriously contends that it otherwise acted with anything but reasonable promptness in its decision.

Fourth, remand would be rare—rather than remand being more the norm, *see Florida Power*, 470 U.S. at 744—were the court merely to enjoin a locality every time it failed the "in writing" requirement without some showing of delay, contumaciousness, futility, or another sound reason for an injunction before the board explains its decision. In short, under what circumstances would a remand for a first violation of the "in writing" requirement of 47 U.S.C. § 332(c)(7)(B)(iii) ever be appropriate? Most all courts entering injunctions based on a violation of this provision do so because the board lacked substantial evidence for its decision, not just that it neglected to articulate the explanation for its decision in the first place. *See, e.g., New Par v. City of Saginaw*, 301 F.3d 390, 399-400 (6th Cir. 2002) (citing cases);

*Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1220-22 (11th Cir. 2002) (citing cases); *cf. PrimeCo*, 352 F.3d at 1151 (leaving open question of whether statute's timing requirement bears on remedy). A locality that has articulated its explanation, but failed to marshal substantial evidence, might well appropriately face an injunction. That is not the case before the court today. And resolution of this issue can still be resolved expeditiously by the court's remand order. After all, a "locality cannot stymie or burden the judicial review contemplated by the statute by delaying the release of its reasons for a substantial time after it conveys its written denial." *Roswell*, 574 U.S. at 304.

Accordingly, the court will remand this matter to the BZA for a prompt TCA-compliant decision. The court will be receptive to expedited briefing and review of this matter should the BZA decline to issue the variance without such a compliant decision or without substantial evidence, upon any necessary appeal and assignment here.

## CONCLUSION

For these reasons, the court GRANTS Verizon's summary judgment motion [27], FINDS as a matter of law that the BZA violated the TCA in not explaining its decision "in writing" under 47 U.S.C. § 332(c)(7)(B)(iii), and REMANDS this case to the BZA to reconsider the variance petition and to issue a TCA-compliant decision on the variance petition by October 21, 2024.

SO ORDERED.

September 6, 2024                                  *s/ Damon R. Leichty*
                                                   Judge, United States District Court