UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS,

        Plaintiff,

   v.                                     CAUSE NO. 3:23cv913 DRL

CITY OF ELKHART BOARD
OF ZONING APPEALS,

        Defendant.

## OPINION AND ORDER

The court granted summary judgment to petitioner Cellco Partnership d/b/a Verizon Wireless. It found the Elkhart Board of Zoning Appeals violated the "in writing" requirement of the Telecommunications Act of 1996 (TCA), 47 U.S.C. § 332(c)(7)(B)(iii), when the BZA denied, without articulating reasons for its decision, a petition for a use variance to situate a 135-foot wireless communication facility (monopole). The case was remanded to the BZA to reconsider the petition and issue a TCA-compliant decision within six weeks.

Verizon won but not enough. Unsatisfied, Verizon moved to alter the judgment, arguing that remand was not a legal remedy for the TCA violation and was a manifest error of law. In the alternative, Verizon requested the judgment be amended to clarify that the record cannot be supplemented on remand. The court denies the motion.

BACKGROUND

By way of mere introduction, because a fuller account can be found in the court's prior opinion (September 6, 2024), Heidi Gaskill, trustee of the Heidi Gaskill Revocable Trust (Trust), petitioned the BZA for a use variance to place a Verizon monopole on the Trust's property in

Elkhart, Indiana [26-1]. This was filed in August 2023. The BZA held a public hearing on the variance petition in September 2023, which included a presentation from Verizon and the Trust, testimony from Ms. Gaskill, a recommendation from city staff in support of the monopole, and testimony from Elkhart residents in opposition. The BZA voted unanimously to deny the petition during the hearing, but no board member provided reasons for their vote, nor did the BZA explain its vote in writing, including in the letter it sent the Trust on September 27, 2023.

Later that fall, Verizon requested under 47 U.S.C. § 332(c)(7)(B)(v) judicial review of the BZA's decision and an injunction requiring the BZA to issue the variance and any other necessary permits. In its summary judgment motion the following year, Verizon argued that the BZA's denial violated the TCA's requirements that its decision be in writing and be supported by substantial evidence. Verizon also claimed that the administrative decision effectively prohibited provision of personal wireless services. The motion became ripe for ruling on June 20, 2024.

On September 6, the court granted summary judgment for Verizon, reaching only the first issue and finding that the BZA violated the TCA by not explaining its decision "in writing" under 47 U.S.C. § 332(c)(7)(B)(iii). *See T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 300 (2015). In deciding the appropriate remedy last fall, the court noted that, though the TCA doesn't specify a remedy for the violation, "the ordinary rule in administrative law is that a court must remand errors to the agency except in rare circumstances." *Id.* at 309 (Alito, J., concurring) (quotations and citation omitted). In addition, the TCA emphasizes local authority over zoning decisions for personal wireless service facilities, *see* 47 U.S.C. § 332(c)(7)(A), and the BZA acted promptly on the petition. The court likewise kept the BZA on a short but reasonable leash in terms of timing. The court remanded the case to the BZA to reconsider the variance petition and to issue a TCA-compliant decision on the petition within six weeks.

Because Verizon planned to file a motion to clarify or modify the judgment under Rule 59(e), the parties jointly stipulated to a request on October 1, 2024 to stay the judgment and the BZA's obligation to issue a new decision. The court granted the request the following day, and Verizon filed its Rule 59(e) motion two days later.

## STANDARD

A party may file a motion under Rule 59(e) to alter, amend, or vacate a judgment within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e); *Foman v. Davis*, 371 U.S. 178, 181 (1962). The Rule "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quotation omitted). Still, a district court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (citation omitted). Accordingly, relief under Rule 59(e) is an extraordinary remedy reserved for the exceptional case. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). To prevail, the movant must clearly establish one of these grounds for relief. *Id.* Reconsideration may only address "matters properly encompassed in a decision on the merits." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982). To this end, it doesn't offer "a vehicle for a party to undo its own procedural failures . . . [or to] introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quotation omitted). The motion is "tightly tied to the underlying judgment." *Banister*, 590 U.S. at 508.

3

DISCUSSION

The court must address three issues today, and it begins with the BZA's request to strike—an often-unnecessary and complicating mechanism when arguments to strike (particularly when they really are just arguments to disregard or oppose) can be included in the briefs in main and when the motion just creates another chain of briefing that tends to delay ruling. Such motions are disfavored. *See Pack v. Middlebury Cmty. Schs.*, 458 F. Supp.3d 1020, 1028 (N.D. Ind. 2020). Here, the BZA handled this better than some by tucking the argument in its response brief, though this became an invitation for Verizon to file two briefs thereafter rather than one.

The BZA says Verizon's arguments rehash its summary judgment motion. That may prove a basis to oppose the Rule 59(e) motion substantively—because such a motion cannot merely rehash previously rejected arguments, *see Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014)—but this isn't a reason to "strike" the reconsideration motion or any part of it.

The BZA also says Verizon exceeded the scope of their agreement on the stay. That too could be presented, in response to the reconsideration motion, as a reason for the court to consider one argument and not another, but it really requires no separate request to strike. The court always has the power to disregard something as improper, even to strike something outside allowable protocol or rule. *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).

The real lingering concern seems to be with the agreement between Verizon and the BZA as to the stay. The BZA says Verizon's motion exceeds the scope of the stipulated stay because it seeks more than just clarification—it seeks to modify (vacate) the judgment. The answer to that is simple: the parties contemplated in their stipulation that Verizon would file a Rule 59(e) motion "seeking clarification and/or modification of the judgment." So did the court's prior order entering the stay. This Rule 59(e) motion fits neatly within these parameters.

With the request to strike denied, the court turns to the merits. Verizon asks the court to vacate its remand to the BZA. The company argues that the TCA does not permit a remand to the BZA when its decision violated the TCA's "in writing" requirement. Rather, Verizon invites the court to engage in a speculative and scouring exercise of deciding what the basis of the BZA's decision might have been, and then to decide among all these potential candidates whether any might have substantial evidence to support it. The court declines—just as it did before.

The power to remand isn't uncommon, neither generally in administrative law nor particularly under the TCA. Verizon nonetheless argues that remand is forbidden because any reason the BZA might give on remand would necessarily be a *post hoc* rationalization, and that cannot be a basis for upholding a locality's decision. *See Roswell*, 574 U.S. at 304 n.3. It urges the court instead to decide the remaining issues from its summary judgment motion. But the TCA's text, federalism, traditional administrative law principles, and TCA precedents demonstrate that remand was not a manifest error of law. It was altogether appropriate.

"The TCA does not specify a remedy for violations of the cellular siting subsection." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (citing 47 U.S.C. § 332(c)(7)(B)(v)). To start, nothing in the statutory text forecloses remand as a remedy. And to the contrary, "sound concepts of federalism, echoed within the TCA, *see* 47 U.S.C. § 332(c)(7)(A), counsel an explained administrative decision before a judge's review." *Cellco P'ship v. City of Elkhart Bd. of Zoning Appeals*, 2024 U.S. Dist. LEXIS 160483, 11 (N.D. Ind. Sept. 6, 2024). The court expressed these views the last time, and Verizon has not countered them.

Nor did *Roswell*, the leading case on the TCA, specify a remedy. Instead, according to the *Roswell* majority, Congress intended to invoke certain administrative law principles when it added the term "substantial evidence" in the statute. *Roswell*, 574 U.S. at 301-02. The concurrence said

5

the same, observing that "other traditional administrative law principles may also apply," including "the ordinary rule in administrative law [] that a court must remand errors to the agency 'except in rare circumstances.'" *Id.* at 308-09 (Alito, J., concurring) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Indeed, *Roswell* observed that the "orderly functioning of the process of substantial-evidence review requires that the grounds upon which the administrative agency acted be clearly disclosed," and that "courts cannot exercise their duty of [such] review unless they are advised of the considerations underlying the action under review." *Id.* at 301-02 (citations omitted). An agency must "articulate a satisfactory explanation for its action" to enable such review. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The reviewing court should not attempt itself to make up for such deficiencies"—for the court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.*; *accord SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("administrative process will best be vindicated by clarity in its exercise") (citation omitted); *Beaumont, S.L. & W.R. Co. v. United States*, 282 U.S. 74, 86 (1930) ("Complete statements by the [agency] showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions[.]"); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

This court did nothing more than adhere to this charge—requiring the BZA to articulate its reason without the court making up for that deficiency. No written statement, board minutes, letter, or other official record ever communicated the reason. This wasn't a "rare case" when remand was inappropriate. *See Florida Power*, 470 U.S. at 744. Quite the opposite—rarely do federal courts deal with mere hypotheticals, *see, e.g., Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998); *T.H.E. Ins. Co. v. Olson*, 51 F.4th 264, 270 (7th Cir. 2022), and, though the BZA made

6

a final decision, the court cannot overstep its authority and pretend to divine the BZA's thinking among a host of conceived possibilities, all left by the agency unsaid despite the TCA's command that they be put it "in writing," *Roswell*, 574 U.S. at 301-02.

For its part, Verizon seeks an injunction as its equitable remedy, but that remains a matter of judicial discretion. *See Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948); *Fed. Trade Comm'n v. Day Pacer LLC*, 125 F.4th 791, 2025 U.S. App. LEXIS 137, 40 (7th Cir. 2025). Within a statute silent as to a remedy, one decision has called the task today a best "guess" as to what remedy "will best implement the statutory scheme" in the TCA. *PrimeCo Pers. Commc'ns v. City of Mequon*, 352 F.3d 1147, 1153 (7th Cir. 2003). The court sees its decision last fall as far more reasoned than a mere guess, but the point remains that the court has wide latitude in deciding whether to grant the extraordinary remedy of an injunction. *See also Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1220 (11th Cir. 2002) (discretion to grant remedy under TCA).

Missing the "in writing" requirement should not every time result in a "gotcha" moment that triggers the strongest of equitable remedies by means of injunction, nor should it foist on a reviewing court the task of administratively making up the difference. *Roswell*, 574 U.S. at 301-02. The TCA protects federal interests through both procedural and substantive methods. A written finding is that procedural method, *Aegerter v. City of Delafield*, 174 F.3d 886, 889 (7th Cir. 1999), whereas the TCA's substantial-evidence and anti-prohibition clauses substantively protect these interests, *see id.* at 889, 891; *see also Helcher v. Dearborn Cnty.*, 595 F.3d 710, 728-29 (7th Cir. 2010); *Voicestream Minneapolis, Inc. v. St. Croix Cnty.*, 342 F.3d 818, 833-35 (7th Cir. 2003). Even then, such review occurs under a "deferential standard." *Aegerter*, 174 F.3d at 889, 891.[1] Whether one

---

[1] "This may not mean, however, that every municipality must have towers wherever anyone wants to put them.... Some may disagree with Congress's decision to leave so much authority in the hands of state and local governments

7

reason for the variance denial on this record may be doubtful, another may not. And that is for the locality to say in the first instance—so says the statute. *See id.* at 891-92; *see also* 47 U.S.C. §§ 332(c)(7)(A), (c)(7)(B)(ii), (c)(7)(B)(iii).

In this situation in which the BZA acted promptly but neglected to identify its reason in writing for denying the use variance, and in the field of administrative law that favors the requirement that the agency specify its reason (just as the TCA requires), and in an area where the law affords the court discretion as to the proper remedy for the failure to abide this statutory requirement, *see PrimeCo*, 352 F.3d at 1153, it proves difficult to argue that remand was a manifest error of law. One might disagree with the result—the exercise of that discretion—but not easily call that contrary to law. After all, to adopt Verizon's view, "remand would be rare—rather than remand being more the norm—were the court merely to enjoin a locality every time it failed the 'in writing' requirement without some showing of delay, contumaciousness, futility, or another sound reason for an injunction before the board explains its decision." *Cellco P'ship*, 2024 U.S. Dist. LEXIS 160483 at 12 (citation omitted).

That said, different scenarios might cause different courts to exercise their discretion in different ways. This frames the next debate between the parties: whether courts in the TCA context routinely reject remand when the board or agency fails to articulate written reasons, as Verizon would have it, or whether courts often remand a case for just such a TCA violation and consistent with traditional administrative principles, as the BZA argues it.

---

to affect the placement of the physical infrastructure of an important part of the nation's evolving telecommunications network. But that is what it did when it passed the Telecommunications Act of 1996, and it is not [the court's] job to second-guess that political decision." *Aegerter*, 174 F.3d at 891-92.

The reality is that some courts remand such cases and some courts do not, though there is more nuance to it. But at the start, remand (as an option) isn't contrary to law under the TCA. The remedy promotes many sound purposes—compliance with the law, assurance that a board has considered all important data and arguments, and enabling a reviewing court to know what motivated the decision and to focus efficiently, with its precious resources, on the reason and record through that lens. It "allows [the court], in combination with the written record, to determine if the decision is supported by substantial evidence"—that is, it allows for "meaningful judicial review of the decisions of local governments." *Helcher*, 595 F.3d at 719. That is a primary purpose of the TCA's "in writing" requirement, and remand promotes this purpose. Making the board do its job helps the court do its job, without guessing or making up for that deficiency.

*Helcher*, albeit decided before *Roswell*, appears to consider remand as a default assumption under the TCA, not the exception—quite consistent with administrative law. *Id.* at 719 n.4; *see Florida Power*, 470 U.S. at 744. There, in discussing a viable remedy for a violation of the TCA's "in writing" requirement, the court of appeals paused to note that "not every failure to meet the standard . . . will require reversal or remand." *Helcher*, 595 F.3d at 719 n.4. Similarly, *Aegerter* called the district court's decision to remand (before the second appeal) for the locality's "in writing" oversight a "safeguard" that "guaranteed" the TCA's procedural means for protecting federal interests. *Aegerter*, 174 F.3d at 891. Of course, there may be times in which remand might serve no useful purpose, or when the record permits a court to scratch together the board's rationale, or when the locality contumaciously sits on its hands to frustrate the TCA's expedited timing, or when the locality has not even requested a remand, *see PrimeCo*, 352 F.3d at 1152, but this record

reflects none of these concerns.² *See also Cellco P'ship*, 2024 U.S. Dist. LEXIS 160483 at 12; *see, e.g., USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment*, 465 F.3d 817, 823 (8th Cir. 2006).

Consistent with all of this—discretion, administrative law principles, the TCA's text, and federalism—other courts have remanded TCA cases when they believe there are good reasons, say when the locality has not placed its reasons in writing, when judicial review is stymied, or when evidence requires additional consideration. *See, e.g., Aegerter*, 174 F.3d at 891 (district court remanded council's first failure to put reasons "in writing" and then reviewed second administrative decision); *AT&T Wireless Servs. v. Orange Cnty.*, 982 F. Supp. 856, 862 (M.D. Fla. 1997) (remanding for written decision in 35 days when board failed to put reason in writing); *USCOC of Greater Mo., LLC v. Cnty. of Franklin*, 575 F. Supp.2d 1096, 1101, 1103, 1103 n.4 (E.D. Mo. 2008) (remanding when locality didn't satisfy "in writing" requirement and certain issues required additional consideration); *New Cingular Wireless, LLC v. City of Brownsville*, 2019 U.S. Dist. LEXIS 230367, 16-20, 31-32 (S.D. Tex. Dec. 20, 2019) (remanding to state reason "in writing" on expedited basis); *see also Sprint Spectrum, LP v. City of Jeffersonville Bd. of Zoning Appeals*, 2008 U.S. Dist. LEXIS 24802, 8-13 (S.D. Ind. Mar. 27, 2008) (remanding because "meager" record precluded judicial review); *Cellular Tel. Co. v. Zoning Bd. of Adjustment of Ho-Ho-Kus*, 197 F.3d 64, 76 (3rd Cir. 1999) (locality must reconsider the evidence on remand); *cf. Charles S. Hayes, Inc. v. Bd. of Comm'rs*, 2017 U.S. Dist. LEXIS 199579, 10-16 (N.D. Ind. Dec. 5, 2017) (remanding where the decision wasn't in writing and the record contained "both potentially legitimate and

---

² In *PrimeCo*, another case involving Verizon, the court of appeals found that the record contained insufficient evidence "to have enabled the commission to make a responsible decision" such that the usual remand might seem appropriate, *except that* the city had not requested such relief. *PrimeCo*, 352 F.3d at 1152. The court of appeals noted that other courts expressed skepticism about the appropriateness of remand but declined to take a position. That said, the basis for approving the injunction was the city's failure to ask for another remedy in a remand. Once more, nothing in the law forecloses remand as a remedy.

illegitimate reasons for the Board's decision"), *modified*, 2018 U.S. Dist. LEXIS 48874, 15-17 (N.D. Ind. Mar. 26, 2018) (finding, given intervening delay, the lack of substantial evidence, and the presentation of new evidence on reconsideration, and when locality never argued for remand in the first place, that remand would "serve no useful purpose").

In contrast, other courts have declined a remand, but often this occurs when the "in writing" requirement wasn't disputed, or when the decision lacked substantial evidence in support or the town effectively prohibited cellphone tower construction. *See, e.g.*, *Oyster Bay*, 166 F.3d at 497 (substantial evidence); *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 409-10 (3d Cir. 1999) (substantial evidence); *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 25 (1st Cir. 2002) (effective prohibition). There are more, but the exercise of discretion by some courts to decline to remand a TCA case doesn't mean the law proscribes for all violations of the TCA, much less this one procedural violation, just such a remedy.

Here, the court found that judicial review was precluded by the BZA's failure to articulate its reason (or reasons) for its decision to deny the use variance. But the court did not find there would be no useful purpose to remanding the case back to the BZA. After considering different remedies, and balancing interests in expediency, federalism, the statutory scheme, and a district court's proper role under substantial evidence review, the court decided remand with instruction would address this shortcoming. The BZA's task on remand was to come to a decision on reconsideration that permits judicial review. Enabling the locality to decide the petition in a way that enables review was without a doubt a useful purpose. Given traditional principles of administrative law and the varying remedies available for TCA violations, the court cannot say its remand order was a manifest error of law.

That leaves the scope of remand as the last question. The court directed the BZA on remand to reconsider its decision in compliance with the TCA [42]. The court chose its words carefully. Typically, a remand leaves to the agency the task of how best to arrive at a reconsidered decision, whether that means engaging in more deliberations, elaborating on its original decision (even reaching a different end result), or considering new data or evidence along the way. But perhaps the court, in its original thought to rest on administrative principles in announcing a remand in its last decision, and without briefing on any restricted scope of remand from Verizon, disserved the parties in remaining almost as silent about this remedy as the TCA does. The parties request clarification because they disagree about the BZA's task ahead.

It is a "foundational principle of administrative law" that judicial review is limited to the reason or reasons the BZA acted. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (citation omitted); *see also Roswell*, 574 U.S. at 301-02. When that action is inadequate, administrative principles instruct that an agency may do one of two things on remand. "First, the agency can offer a fuller explanation of the agency's reasoning *at the time of the agency action.*" *DHS*, 591 U.S. at 20 (quotation omitted). This route has "important limitations" because the agency "may elaborate later on that reason (or reasons) but may not provide new ones." *Id.* at 21; *see also Roswell*, 574 U.S. at 304 n.3. Any appeal following an administrative decision that chooses this first path must view the explanation critically to ensure it is not upheld on the basis of impermissible *post hoc* rationalization. *See DHS*, 591 U.S. at 21. Alternatively, the agency may "deal with the problem afresh by taking *new* agency action." *Id.* (quotations and citation omitted). In such circumstances, the agency "is not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id.* In remanding for reconsideration, the court thus presented the BZA with a choice. This choice has a longstanding presence in administrative

law, and it since has been reaffirmed. *See Biden v. Texas*, 597 U.S. 785, 807-08 (2022). Therein lies the task ahead.

Verizon adds concerns. For one, it worries about *post hoc* rationalizations, but administrative law principles address this already. And the court cannot say remand will necessarily result in a *post hoc* rationalization. Nor will the court prejudge it today. There may be other valid ways to elaborate on the BZA's original decision. The court can't know the record that may come. Verizon's assertion that any rationalization as part of a reconsidered variance denial will be unavoidably a *post hoc* rationalization reads *Roswell* too broadly and administrative law too narrowly. It also assumes that an agency only has one chance to decide the merits and only one choice on remand. If the board can provide reasons for a new decision, and does so "in writing" and contemporaneously, it enables judicial review from there. Remand in this scenario serves the aims of expedient review, particularly on the timeline the court set, and deference to the locality to decide, for "Congress decided not to preempt local regulation entirely." *PrimeCo*, 352 F.3d at 1148; *see* 47 U.S.C. § 332(c)(7)(A).

For another concern, Verizon worries about timeliness and delay. It might best have considered this when it omitted argument, in its original briefs, about any restrictions to place on remand after the BZA argued for that very remedy. New argument cannot serve as the basis for reconsideration. *See First State Bank of Monticello v. Ohio Cas. Ins.*, 555 F.3d 564, 572 (7th Cir. 2009). This matter also received expedited review by the BZA (and the court).

Verizon overstates the impact of the timeliness requirements of the TCA and underlying Federal Communications Commission regulations. The TCA requires a locality to act on a zoning petition "within a reasonable period of time," 47 U.S.C. § 332(c)(7)(B)(ii), and the FCC instructs that reasonableness is presumed when the petition is acted upon within 150 days, 47 C.F.R.

13

§ 1.6003(b), (c)(1)(iv). The TCA provides for expedited *review*, 47 U.S.C. § 332(c)(7)(B)(v)—not, as Verizon puts it, "expedited *relief*." Save the possibility that a locality's delayed decisionmaking frustrates the standard of substantial evidence or "ha[s] the effect of prohibiting the provision of personal wireless services," 47 U.S.C. § 332(c)(7)(B)(i)(II), the TCA's text provides no other instruction bearing on the resolution of a zoning decision. That the court hasn't ordered all the relief Verizon requested does not mean the relief ordered wasn't proper.

No one here disputes that the BZA acted on variance petition within a reasonable period or that review has not been expedited. Remand does not change these circumstances. If the BZA concludes its reconsideration on a tight schedule as directed by the court, it will still have acted on the petition within a reasonable period—for the BZA issued its original decision less than two months after the petition was filed.

Likewise, proceedings on remand have no bearing on whether the court expedited its review of the BZA's decision. It ruled on summary judgment briefing just over two months after the motion became ripe, and now just over three months on reconsideration. Any further delay will have resulted from Verizon's time spent ripening judicial review (now twice). Query whether it might well have been better—even swifter—to have promptly presented the "in writing" failing in a motion to remand immediately on appeal, leaving the merits until the reason was known. The parties might well have been able to stipulate (as sometimes happens in administrative appeals) that the agency failed to give its reason when the law required it. That singular issue would have permitted an immediate decision on review and remand to facilitate the locality's prompt explanation of its rationale, and, in doing so, avoided the quandary of any need for Verizon to conceptualize and argue against the guessed-at possibilities—the "sandbagging" concern in *Roswell*. Once the actual reason was known, it could be promptly attacked as lacking

14

substantial evidence, and the court would then be informed of the reason and record and likewise laser-focused in its task of review, aided by the parties who would be arguing realities rather than hypotheticals. Verizon, in part too, made the bed in which it now lies.

And for all the fear of sandbagging now, Verizon has an insight into what might worry the BZA and has every opportunity to address that with new evidence too. In that dialogue or process to come, the parties may see it differently. As much as Congress may have enacted the TCA to "'encourage the rapid deployment of new telecommunications technologies,'" *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (quoting the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, 56 (1996)), Congress was clear that this encouragement wasn't at the expense of "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities," 47 U.S.C. § 332(c)(7)(A). The court's remand order balanced these prerogatives, allowing the BZA to issue a TCA-compliant decision on reconsideration while requiring the decision to be made within a reasonably prompt time. To the extent the apparent purposes of the TCA should be considered, Verizon exclusively emphasizes those supporting its desire to build its facility at the expense of those vesting some authority over that decision in the BZA.

Remand thus promotes the balance the TCA strikes between efficient proliferation of cell service technology and empowerment of local authorities to oversee the proper placement of facilities. *See PrimeCo*, 352 F.3d at 1149; *Aegerter*, 174 F.3d at 887, 891-92; 47 U.S.C. § 332(c)(7)(A). Congress was concerned with NIMBYs—zoning boards that would unilaterally oppose the growth of wireless services, screaming *not in my backyard*. *PrimeCo*, 352 F.3d at 1148. In requiring that a decision to deny a siting permit be supported by substantial evidence, and in granting providers recourse when a locality effectively prohibits construction, the TCA charges a zoning

15

authority with determining the most suitable location for construction, rather than whether to permit it at all. *See id.* at 1149; 47 U.S.C. §§ 332(c)(7)(B)(i)(II), (c)(7)(B)(iii), (c)(7)(B)(v). The court is ill-equipped to contribute to this evaluation and should seldom be involved, save to ensure the parties play faithfully by the rules. Better to leave it to the WIMBYs—local authorities that, due to the TCA and if given a demonstrated need, must tend to ask *where in my backyard? See Helcher*, 595 F.3d at 728-29; *Voicestream*, 342 F.3d at 833-35; *Aegerter*, 174 F.3d at 891.

In the end, Verizon's reconsideration motion just marginally addresses, in truth, the myriad reasons the court originally gave for choosing to remand rather than to grant any other remedy. Verizon has not established a manifest error of law or fact. Nor has it established any conflict between the TCA and state law procedures during remand. *See, e.g., Aegerter*, 174 F.3d at 891-92 (appeal from second administrative hearing). The court leaves to the parties the obligation to comply with their other requirements under the law.

Accordingly, the court DENIES the BZA's motion to strike [48], DENIES Verizon's motion to alter or amend the court's judgment [45], LIFTS the stay, and AFFIRMS its order remanding this case to the BZA to reconsider the variance petition and to issue a TCA-compliant decision on the variance petition, albeit now by April 8, 2025.

SO ORDERED.

February 7, 2025                               *s/ Damon R. Leichty*
                                               Judge, United States District Court